UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ERIC LEE BOUIE,

Plaintiff,

v.

AHMED ALZAYADI, *et al*.,

Defendants.

Case No. 25-10132
Honorable Linda V. Parker
Magistrate Judge Elizabeth A. Stafford

---

## REPORT AND RECOMMENDATION TO GRANT IN PART AND DENY IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 53)

---

### I.   Introduction

In his amended complaint, plaintiff Eric Lee Bouie sues defendants under 42 U.S.C. § 1983, alleging violations of his Fourth and Fourteenth Amendment rights.  ECF No. 51.  The Honorable Linda V. Parker referred the matter to the undersigned for all pretrial matters under 28 U.S.C. § 636(b)(1).  ECF No. 8.  Defendants move to dismiss Bouie's amended complaint under Federal Rule of Civil Procedure 12(b)(6).  ECF No. 53. The Court **RECOMMENDS** that the motion be **GRANTED IN PART AND DENIED IN PART.**

1

## II.     Background

Bouie sues Oakland County, the Oakland County Sheriff's Department, and three of its deputies (J. Salyers, Ahmed Alzayadi, Jorge Landeros[1]), and multiple unidentified "John Doe" deputies and supervisors. ECF No. 51, PageID.462, 469, 494.  The individual defendants are sued in both their individual and official capacities.  *Id*., PageID.468-469.

Because defendants move to dismiss under Rule 12(b)(6), the allegations in Bouie's amended complaint are accepted as true.  He claims that, on the night of Christmas Eve in 2023, "deputies from the Oakland County Sheriff's Department were dispatched in response to a domestic disturbance report made by Desiree McCullough, the mother of two of Bouie's children."  *Id*., PageID.475.  McCullough, who did not live with Bouie, reported that Bouie had threatened her with a knife during a custody exchange that took place earlier that day.  *Id*.  McCollough's cousin also told deputies that she overheard an argument and Bouie making threats. *Id*.  "No physical injuries were reported, and no request for immediate protective custody or assistance was made by either woman."  *Id*.

---

[1]Bouie spells this defendant's last name as both "Landeros" and "Landersos."  ECF No. 51, PageID.462, 469.  The Court will use the spelling used by defendants, "Landeros."  ECF No. 53, PageID.529.

2

The deputies proceeded to Bouie's home "without first seeking or obtaining an arrest warrant, search warrant, or any form of judicial authorization." *Id*. "Upon arrival, the deputies attempted to make contact by knocking on the door and ringing the doorbell." *Id*., PageID.476. Bouie "did not answer the door in person but communicated with deputies via a two-way video Ring-type doorbell device." *Id.* Bouie's interaction with the "deputies via the doorbell was calm and non-threatening. At no point did [Bouie] make any threats, display any weapons, or otherwise create a situation indicative of exigent circumstances, hot pursuit, or imminent danger." *Id*.

Bouie alleges that a deputy's Body-Worn-Camera (BWC) video footage "reveals that no attempt was made to articulate an exigent circumstance, nor was there any observed emergency inside the residence." *Id.* "No noises, visible injuries, evidence of distress, or other signs of danger were observed or reported by the deputies prior to entry." *Id.,* PageID.477. "There was no evidence of imminent danger, injury, or destruction of evidence. No sounds or visual indicators suggested that anyone inside the home required immediate aid or protection." *Id*., PageID.481. Rather, the "deputies were responding to a domestic complaint that had occurred several hours earlier, involving no ongoing

3

emergency or threat.  The scene was calm and secure, and [Bouie] had communicated with deputies via a video doorbell device in a non-confrontational and peaceful manner."  *Id*., PageID.480.  Still, "deputies made the decision to forcibly enter [Bouie's] home without consent and without legal justification."  *Id.*, PageID.476.

Bouie also alleges that deputies "intentionally muted or obstructed the audio recording of their body-worn cameras" for a few minutes when they were outside of his home.  *Id*., PageID.476.

Bouie's amended complaint asserts unreasonable search and seizure by the individual defendants (Count I); failure to intervene by the individual defendants (Count II); violation of due process by the individual defendants (Count III); municipal liability claims against the County and the sheriff's department (Count IV); and supervisory liability against the John Doe defendants (Count V).

### III.   Analysis

### A.

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests a complaint's legal sufficiency.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S.

4

662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The *Iqbal* Court explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When evaluating a complaint's sufficiency, the court accepts its factual allegations as true, draws all reasonable inferences in the plaintiff's favor, and then determines whether those facts and inferences plausibly give rise to an entitlement to relief.  *Hodges v. City of Grand Rapids*, 139 F.4th 495, 504 (6th Cir. 2025).  "This is so even where," as here, the defendants raise "the defense of qualified immunity."  *Id.*

"State officials are entitled to qualified immunity from a § 1983 suit unless a plaintiff can show (1) that an official violated a statutory or constitutional right, and (2) that right was clearly established when the events took place."  *Romero v. City of Lansing*, 159 F.4th 1002, 1007 (6th Cir. 2025).  As to the first inquiry, "[t]he key question is whether, taking the plaintiff's well-pled factual allegations as true and drawing all inferences in h[is] favor, the plaintiff has plausibly alleged facts that allow h[im] to succeed on the merits."  *Id.*  As to the "clearly established" inquiry, existing precedent must give officials fair warning that the conduct at issue is unlawful.  *Kisela v. Hughes*, 548 U.S. 100, 104 (2008).

**B.**

Before addressing the plausibility of Bouie's claims, the Court first must first decide whether to consider three BWC videos and corresponding transcripts defendants submit to support their motion to dismiss.  ECF No. 53, PageID.548; ECF No. 53-2; ECF No. 53-3; ECF No. 53-4; ECF No. 53-5; ECF No. 53-6; ECF No. 53-7;ECF No. 57.  Two of the videos show officers interviewing McCullough and her cousin, and the other one shows what happened at Bouie's home.  *Id.*

The Court granted defendants' motion for leave to file the videos because it complied with Rule 19 of the Eastern District of Michigan's Electronic Filing Policies and Procedures.  ECF No. 57.  Bouie objected to the Court granting leave without awaiting a response from him.  ECF No. 60; ECF No. 59, PageID.706, 715, 718-719.  He asserts that his due process rights have been violated and that the video cannot be considered under Rule 12(b)(6).  *Id*.  And Bouie claims that consideration of defendants' qualified immunity defenses is premature at this stage.  ECF No. 59, PageID.718.

Bouie's complaints about the Court permitting defendants to file the videos are misplaced.  First, the Court need not await Bouie's response to decide whether defendants should be allowed *to file* materials on the

6

docket, as docket management is a matter within the Court's discretion. *See RJ Control Consultants, Inc. v. Multiject, LLC*, 100 F.4th 659, 669 (6th Cir. 2024) (emphasizing that "trial courts have inherent power to control their dockets.") (cleaned up)).  The order granting leave merely allowed defendants *to file* the videos; it did not address the substantive question about whether the Court could consider them for the motion to dismiss.

And Bouie wrongly suggests that consideration of the videos at the pleading stage is always improper.  When deciding whether claims are plausible under Rule 12(b)(6), a court may consider "the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein."  *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).  Thus, courts consider video footage that is referred to and central to a complaint when deciding motions under Rule 12(b)(6). *See Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017) (permitting consideration of video mentioned throughout the plaintiff's complaint for deciding a Rule 12(b)(6) motion).

As defendants note, Bouie cited the video footage extensively in his amended complaint.  ECF No. 51, PageID.464-465, 476, 485, 496.  And an

7

expert whose report is attached to Bouie's amended complaint relies on the BWC video footage to support his conclusions, meaning that the video is central to Bouie's claims. *Id.*, PageID.503, 510-511. Deciding whether the video footage renders a complaint implausible is especially appropriate when, as here, defendants claim qualified immunity.

> In qualified-immunity cases, we've previously considered videos at the motion-to-dismiss stage. And for good reason. Qualified immunity isn't just a defense to liability—it's immunity from the costs and burdens of suit in the first place. If officers are entitled to qualified immunity and don't receive it at the earliest possible stage, then they lose its protections for as long as they continue to litigate.

*Bell v. City of Southfield, Michigan*, 37 F.4th 362, 364 (6th Cir. 2022) (cleaned up).

At the pleadings stage, a court may consider only whether video footage conflicts with factual allegations in the complaint. "This is because if a video clearly depicts a set of facts contrary to those alleged in the complaint, this makes a plaintiff's allegations implausible." *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024). "But when the video does not blatantly contradict or utterly discredit the complaint, we do not consider it on Rule 12 motion. Instead, as when assessing any motion made under Rule 12, we rely on the allegations in the pleadings alone." *Id.*; *see also Bailey*, 860 F.3d 387 ("If Bailey's pleadings internally

8

contradict verifiable facts central to his claims, that makes his allegations implausible.").

**C**.

Defendants claim that the videos should be considered here because "they utterly discredit Bouie's version of events."  ECF No. 62, PageID.802. But they identify no specific factual allegations in Bouie's amended complaint that are "blatantly contradicted" by the events in the videos.  *Id.;* ECF No. 53, PageID.552.  Only one video shows what happened at Bouie's home, and that footage is consistent with Bouie's factual allegations.

The video shows that the officers knocked and rang the doorbell several times before Bouie's mother responded through a doorbell intercom.  ECF No. 53-6, BWC of Arrest, 2:57-3:08.  The officers told Bouie's mother that they wanted to speak with him.  *Id*., 3:54-4:03.  Bouie was then heard speaking, telling the officers that they could speak to him through the intercom.  *Id*., 4:10-4:16.  The officer said that they wanted to get "side of the story" in a statement.  *Id*., 4:16-4:22.  Bouie declined, stating that he preferred speaking to the officers through the doorbell camera and intercom so that their interaction would be recorded.  *Id*., 4:22-4:25, 4:55-4:58.  An officer then muted the BWC audio and obscured the

9

video for a few minutes, apparently to allow the officers to confer privately. *Id.*, 5:15-8:56. When the officers finished conferring, one told Bouie that they would force entry into the house if he did not open the door and come out. *Id.*, 9:22-9:32. An officer then told Bouie he has a "couple of minutes to decide" before a forced entry into the house. *Id.*, 9:46-9:50. The audio was then muted again. *Id.*, 9:51-10:18. After Bouie still refused to open the door, an officer kicked in the front door and arrested Bouie. *Id.*, 11:30-11:34. In sum, the video footage aligns with the factual allegations in Bouie's complaint. *See* ECF No. 51, PageID.475-476.

Defendants argue that the video footage proves that exigent circumstances permitted them to enter Bouie's home without a warrant. ECF No. 53, PageID.551-555. They claim that, under the "totality of circumstances," the Court should find that they reasonably believed that (1) they needed to prevent Bouie from fleeing and that (2) they had anobjectively reasonable fear for their safety. *Id*. But the totality-of-circumstances test is a "fact-bound" standard, not based on the pleadings. *Howell v. McCormick*, 148 F.4th 834, 845 (6th Cir. 2025). "A motion to dismiss is an inappropriate procedural vehicle to determine such questions." *Dockery v. Tucker*, 73 F. Supp. 2d 224, 233 (E.D.N.Y. 1998). The authority allowing consideration of evidence outside of the pleadings

10

did not "create a broad license for district courts to weigh evidence when evaluating the viability of a legal claim in a motion to dismiss." *Konate v. Vander Laan*, No. CV 5:24-154-KKC, 2025 WL 965745, at *3 (E.D. Ky. Mar. 31, 2025).   The video might "tell a more complete story of what happened on the night in question, but at this stage, we do not require a complete story; we require a *plausible* one." *Hodges v. City of Grand Rapids*, 139 F.4th 495, 506 (6th Cir. 2025).  Defendants "will have an opportunity to present what they view to be the complete story at summary judgment or at trial." *Id.*

The video footage here does not contradict Bouie's factual allegations, so the question is whether those allegations support plausible claims.

## D.

Accepting as true the factual allegations Bouie makes in his amended complaint, the Court finds that his Fourth Amendment claims are plausible. "[T]he physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *Payton v. New York*, 445 U.S. 573, 585 (1980) (cleaned up).  Thus, "warrantless entries into a home presumptively violate the Fourth Amendment." *Howell v. McCormick*, 148 F.4th 834, 844 (6th Cir. 2025).  But "officers need not obtain a warrant if

11

exigent circumstances require them to enter the home immediately without taking the time necessary to track down a judicial officer." *Id.* (cleaned up). Such exigent circumstances include "(1) hot pursuit of a fleeing felon, (2) imminent destruction of evidence, (3) the need to prevent a suspect's escape, and (4) a risk of danger to the police or others." *Baker v. City of Trenton*, 936 F.3d 523, 530 (6th Cir. 2019) (cleaned up). "The government bears a heavy burden to demonstrate that such an exigency occurred." *Johnson v. City of Memphis*, 617 F.3d 864, 868 (6th Cir. 2010) (cleaned up).

Bouie alleges that defendants forcibly entered his home without a warrant, without his consent, and absent facts creating exigent circumstances. He claims that his interaction with the "deputies via the doorbell was calm and non-threatening. At no point did [he] make any threats, display any weapons, or otherwise create a situation indicative of exigent circumstances, hot pursuit, or imminent danger." ECF No. 51*,* PageID.476. "No noises, visible injuries, evidence of distress, or other signs of danger were observed or reported by the deputies prior to entry." *Id.,* PageID.477. "There was no evidence of imminent danger, injury, or destruction of evidence. No sounds or visual indicators suggested that anyone inside the home required immediate aid or protection." *Id.,*

12

PageID.481. Rather, the "deputies were responding to a domestic complaint that had occurred several hours earlier, involving no ongoing emergency or threat. The scene was calm and secure, and [Bouie] had communicated with deputies via a video doorbell device in a non-confrontational and peaceful manner." *Id.*, PageID.480. Those allegations, accepted as true, provide no support for defendants' claim that Bouie posed a danger of escaping or being a danger to the officers.

Put differently, Bouie has stated a plausible claim that defendants entered his house without either a warrant, consent, or exigent circumstances, in violation of the Fourth Amendment. And that kind of constitutional violation is clearly established, precluding qualified immunity. *Coffey v. Carroll*, 933 F.3d 577, 587 (6th Cir. 2019) (noting that it is clearly established that a warrantless entry violates the Fourth Amendment); *Keeton v. Metro. Gov't of Nashville & Davidson Cnty.*, 228 F. App'x 522, 525 (6th Cir. 2007) (affirming district court's denial of qualified immunity on motion to dismiss when warrantless entry was obvious enough under general standards of constitutional care); *Baughman v. Brooks*, No. 15-cv-29-JMH, 2015 WL 3916150, at *3 (E.D. Ky. June 25, 2015) (accepting as true allegation that officer entered plaintiff's home without a warrant and without her consent, plaintiff sufficiently pleaded "facts to establish a

13

constitutional violation of the clearly established right of citizens to be free of warrantless entry into their homes").

Thus, defendants are not entitled to qualified immunity for Bouie's claim of an unreasonable entry of his home.

**D.**

Defendants also seek qualified immunity for Bouie's Fourteenth Amendment procedural due process claims in Count III, arguing that he does not state a plausible due process violation.  The Court agrees.

The Fourteenth Amendment's Due Process Clause bars states from "depriv[ing] any person of life, liberty, or property, without due process of law[.]"  U.S. Const. amend. XIV, § 1.  "To show a procedural due process violation, the plaintiff must allege (1) a life, liberty, or property interest protected by the Due Process Clause; (2) that he was deprived of that interest; and (3) that the state did not provide him adequate process prior to depriving him of the interest."  *Martinez v. Wayne Cnty.,* 142 F.4th 828, 836 (6th Cir. 2025).

Bouie claims in his amended complaint that defendants violated his due process rights by intentionally muting the audio on the BWC recording for a few minutes when they were outside of his home.  ECF No. 51, PageID.487-488.  But he identifies no life, liberty, or property interest that

14

falls within the due process clause's reach.  *Id.*, PageID.486-490.  And

Bouie's response cites no authority clearly establishing that the muting of

body-camera audio recordings for a few minutes during a police interaction

violates due process rights.  ECF No. 59, PageID.732-734.  So defendants

are entitled to qualified immunity on Bouie's due process claim.  *Kisela*, 548

U.S. at 104.[2]

### E.

Defendants contend that Bouie's failure-to-intervene claims in Count

II should be dismissed because there can be no liability for failure to

intervene "if there is no underlying constitutional violation."  ECF No. 53,

PageID.558.  But because the Court finds that Bouie stated a plausible

unreasonable search claim, defendants' argument lacks merit.

---

[2] Bouie's brief, filed by his prior attorney, cites *Morrison v. Bd. of Educ. Boyd Cnty.*, 521 F.3d 602 (6th Cir. 2008), and *Dean v. City of Bay City*, 239 F. App'x 107, 113 (6th Cir. 2007), to support his argument that the Due Process Clause prohibits "**deliberately concealing or destroying material evidence** relevant to a seizure or prosecution."  ECF No. 59, PageID.713, 732-733 (emphasis in original).  But neither case involves a seizure by law enforcement or a criminal prosecution.  The Court suspects that Bouie's prior attorney relied on generative AI for legal research.  Misuse of AI is sanctionable under Federal Rule of Civil Procedures 11 and the Court's inherent authority.  *See Whiting City of Athens Tennessee*, ___ F.3d___, 2026 WL 710568, at *4 (6th Cir. Mar. 13, 2026).  But because the misuse was in a brief signed by Bouie's prior counsel, the Court imposes no sanctions here.

15

**F.**

To state a cognizable claim under § 1983, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676.  Defendants contend that Bouie fails to state any § 1983 claim against Salyers because Bouie "pleads no specific facts as to what actions Salyers took, nor does the body camera disclose what unlawful actions he took." ECF No. 53, PageID.558.

But Bouie *does* plead Salyers' personal involvement in his amended complaint.  He alleges that Salyers (along with Alzayadi and Landeros) unlawfully entered his home in December 2023, and that Salyer's were present during the events and failed to intervene in the warrantless entry into his home.  ECF No. 51, PageID. 480, 483-484.  And the video footage does not conclusively identify any deputy except Alzayadi who entered Bouie's home or was present at the scene.  Because the video footage does not blatantly contradict Bouie's claim that Salyer was present, it does not render that claim implausible.  *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024).

16

The Court finds that Bouie plausibly alleged Salyers personal involvement.

**G**.

Bouie sues Oakland County, the Oakland County Sheriff's Department, and the individual defendants in both their individual and official capacities.  ECF No. 51, PageID.462-463, 467-469.  Defendants contend that the sheriff's department should be dismissed because it is not a separate legal entity from the county that can be sued.  ECF No. 53, PageID.549.  They also contend that the official capacity claims against individual defendants should be dismissed as redundant to the claim against Oakland County.  *Id*., PageID.549-550.  The Court agrees.

County departments and agencies are not separate legal entities susceptible to suit*.  See Preciado v. Wayne Co. Sheriff's Dep't Jail Div*., No. 07-CV-12453, 2007 WL 2121929, at *1 (E.D. Mich. July 24, 2007) (citing *Petty v. County of Franklin, Ohio, et al.,* 478 F.3d 341, 347 (6th Cir. 2007)) ("It is well-settled under Michigan law that county jails, sheriff departments, and other governmental agencies are not legal entities amenable to suit under § 1983.").  Instead, Oakland County is the proper defendant.  *See Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994) (holding that police department is not an entity which can be sued, and

17

Jefferson County is the proper party).  The same is true for Bouie's claims against the individual defendants in their official capacities; they are claims against Oakland County under the law.  *See Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978) (official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent").

## H.

Bouie fails to state a plausible municipal liability claim against Oakland County in Count IV.  Municipal liability arises only if the challenged conduct occurred under the county's "official policy" so that the county's "promulgation or adoption of the policy can be said to have 'caused' one of its employees to violate the Plaintiff's constitutional rights."  *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 692 (1978)).  A party cannot be liable under § 1983 based on respondeat superior.  *Monell*, 436 U.S. at 388-89.  "A plaintiff must therefore specify a governmental policy or custom from which his injuries flowed."  *Brown v. Cuyahoga Cnty., Ohio*, 517 F. App'x 431, 436 (6th Cir. 2013).

In his amended complaint, Bouie makes conclusory allegations that Oakland County "failed to properly train and supervise deputies"; tolerated

or was deliberated indifferent to the improper muting and destruction of BWC recordings; "failed to enforce or implement policies requiring deputies to record and preserve all interactions with the public"; established a "pattern and practice of ailing to investigate, discipline, or retrain deputies involved in prior complaints of unlawful entry, excessive force, evidentiary misconduct, or body-worn camera tampering"; and established a "departmental culture that encouraged or permitted silence and non-intervention." ECF No. 51, PageID.490-494. These are mere legal conclusions without factual support, so Bouie's *Monell* claim is implausible. *Martinez*, 142 F.4th at 845 (6th Cir. 2025) (legal conclusions couched as factual allegations did not support a plausible claim for relief); *Sistrunk v. City of Hillview*, 545 F. Supp. 3d 493, 498 (W.D. Ky. 2021) ("Bare-bones assertions of liability offer no basis on which the Court could infer that Louisville Metro's training (or lack thereof) violated the Constitution.").

## I.

Bouie also names John Doe deputies and supervisors in his amended complaint. ECF No. 51, PageID.462, 469, 494. "Federal Rule of Civil Procedure 10(a) requires that a plaintiff 'name all the parties" in the complaint." *Searcy v. County of Oakland*, 735 F. Supp. 2d 759, 771 (E.D. Mich. 2010). "Although the naming of pseudonymous defendants is

19

permissible where a plaintiff requires discovery to learn the true identities of the defendants, the plaintiff subsequently must amend the complaint to reflect the discovered identifies and effect service on the named parties within the 120-day time period set forth in Rule 4(m)." *Hernandez-Alvarez v. United States*, No. 12-cv-2451, 2013 WL 6443318, at *5 (N.D. Ohio June 3, 2013); *see also Epperson v. City of Humbolt,* 183 F.Supp.3d 897, 909 (W.D. Tenn. 2016) (a plaintiff suing unidentified "defendants must comply with Federal Rule of Civil Procedure 4(m) by serving the 'John Does' within the time specified therein"); *Searcy*, 735 F. Supp. 2d at 771 ("Rule 4(m) applies equally" to pseudonymous "John Doe" defendants).

Under a November 4, 2025 text order, the deadline for amendments to pleadings was November 18, 2025. Bouie filed his amended complaint on that deadline, but identified none of the John Doe defendants. The claims against those defendants should thus be dismissed sua sponte under 28 U.S.C. § 1915(e)(2)(B). And because that Count V is asserted only against John Doe defendants, that entire count should be dismissed.

## IV.   Conclusion

The Court **RECOMMENDS** that defendants' motion to dismiss (ECF No. 53) be **GRANTED IN PART AND DENIED IN PART**. Should this recommendation be adopted, the claims against Salyers, Alzayaki, and

20

Landersos alleging unlawful search and seizure in Court I and failure to intervene to prevent that allege unlawful search and seizure in Count II should remain. All other claims and defendants should be dismissed.

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

Dated: April 2, 2026

## NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). If a party fails to timely file specific objections, any further appeal is waived. *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991). And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived. *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and

recommendation to which it pertains.  Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc.  The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation.  If the Court determines that any objections lack merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that this document was served on counsel of record and any unrepresented parties via the Court's ECF System to their email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on April 2, 2026.

s/Caitlin Shrum
CAITLIN SHRUM
Case Manager